# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMBER L. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-10-310-FHS-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Amber L. Johnson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 27, 1982, and was twenty-six years old at the time of the administrative hearing. (Tr. 27, 107). She graduated high school (Tr. 27, 135), and has worked as an aircraft wiring laborer (Tr. 20, 49). The claimant alleges inability to work since May 24, 2007, due to seizures. (Tr. 107).

## Procedural History

On October 24, 2007, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 107-109). Her application was denied. ALJ Richard J. Kallsnick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 26, 2009 (Tr. 13-22). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. § 416.967(b), except she was to avoid all exposure to hazards such as machinery, heights, etc., as well as avoiding unprotected heights, driving, dangerous moving machinery, and any situation in which a seizure would place her or her co-workers at risk, along with the necessary seizure precautions. (Tr. 16). The ALJ

concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, hand packaging, maid, food order clerk, and charge account clerk. (Tr. 21).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the medical evidence, particularly that of treating physician Dr. C. William Lutton; (ii) by failing to properly evaluate her impairments at step three, in applying the listing of impairments; (iii) by failing to properly assess her RFC; and (iv) by failing to properly evaluate her credibility. Because the ALJ *did* fail to properly evaluate the evidence from Dr. Lutton, the decision of the Commissioner should be reversed.

The medical evidence reveals that the claimant had an abnormal EEG on July 18, 2007, which indicated "[t]he patient was able to attain a normal background, but infrequent sharp discharges were noted over the right temporo-parietal region, suggestive of focal dysfunction in this area, but not pathognomonic for seizure disorder as no frank epileptiform discharges were noted." (Tr. 181). In August 2007, the Jackson Family Clinic in Wagoner, Oklahoma issued a letter to the claimant's employer, stating that the claimant was not allowed to drive and that she was not allowed to return to work until she was cleared by a neurologist. (Tr. 182). Beginning in August 2007, the claimant was also treated by Dr. William Lutton, a neurologist. At the initial assessment, Dr. Lutton noted that he found neither focal nor diffuse dysfunctioning, and ordered an MRI of the brain to ensure that the claimant did not have a tumor. (Tr. 225). An August 29, 2007

MRI of the claimant's brain was unremarkable. (Tr. 233). On September 18, 2007, Dr. Lutton noted that the claimant had been taking Keppra for her seizures, but that she was still experiencing frequent seizures—including one that morning—even though they had been reduced in frequency and severity. (Tr. 223). That same day, Dr. Lutton prepared a note stating that the claimant was not to return to work until her seizures were under control. (Tr. 222). In November 2007, Dr. Lutton changed the claimant's seizure medication from Keppra to Lyrica, and stated that the claimant "suffers from a seizure disorder that is proving to be difficult to control with limited tolerability to medications." (Tr. 219-220). On February 7, 2008, the claimant reported to Dr. Lutton that she had not had any recent seizures, and Dr. Lutton noted the claimant had received some improvement; however, on March 27, 2008, the claimant reported continued seizures, headaches, dizziness, and sleep problems, and stated, that the claimant "suffers from a seizure disorder that is very difficult to control. . . . I have no further recommendations for Ms. Shafer other than going to an epilepsy center. I do not think it is in her best interest to keep changing medications." (Tr. 248-249).

In January 2008, a state consulting physician, Dr. Suzanne Roberts, completed a physical RFC assessment, finding that the claimant had no exertional limitations, but she had the environmental limitations of avoiding unprotected heights, driving, and dangerous moving machinery, as well as avoiding any situations in which a seizure could place claimant or co-workers at risk. (Tr. 238-242). Dr. Roberts also concluded that the claimant's "seizures could be controlled within 1 year with treatment and taking medications as directed." (Tr. 242).

The claimant began seeing Dr. Petie Denny on May 19, 2008. (Tr. 292). In July 2008, the claimant reported to Dr. Denny that her last seizure had been seven weeks previous, and that she had been doing well. (Tr. 284). On January 9, 2009, the claimant reported her most recent seizure as three days previous. Dr. Denny also noted that the claimant averaged three seizures a month, and that when her Lyrica dosage was increased, her seizure frequency increased as well. (Tr. 265). On March 6, 2009, Dr. Denny treated the claimant for nausea and vomiting. He noted her history of seizures and the claimant's report that "her seizures are brought on by headaches. Her headaches are typically controlled by Lortab but she has been out of Lortabs and has, therefore, had more seizures." Additionally, Dr. Denny noted that the claimant had an upcoming appointment at the University of Oklahoma epilepsy center. (Tr. 259). The records from the OU epilepsy center have not been made part of the record.

At the administrative hearing, the claimant testified that she had to stop working in May 2007 because she had a seizure and passed out at work and that the doctors would not release her to go back to work until "they could figure out how they could control my seizures." (Tr. 28). The further testified that she now takes Lyrica for her seizures, and that it has helped "a little bit," and that she had tried several other seizure medications that either did not help or caused bad side effects. (Tr. 29-31). As to her seizures, the claimant testified that she has experienced two grand mal seizures since May 2007, but that she has petit (minor motor) seizures three to four times a week. (Tr. 32-33). She stated that the petit seizures last approximately five minutes, but they leave her feeling fatigued for up to two days. (Tr. 33). She had an appointment with a seizure clinic in

Oklahoma City, but her doctor did not know the cause of her seizures, nor did he have a better way to control them. (Tr. 37). She further testified that she suffers from migraines and stomach problems. (Tr. 35-36). The claimant's mother testified that she had observed her daughter having a grand mal seizure, and was often present when the claimant had petit seizures; that both types of seizures left the claimant feeling exhausted; and that it took the claimant a day or two to recover from petit seizures, but approximately three days to recover from a grand mal seizure. (Tr. 42-48).

Medical opinions from a treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to which they are entitled by analyzing all of the factors set forth in 20 C.F.R. § 404.1527. *See Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a

specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-01 [quotations marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight," *id.* at 1300 [quotation omitted].

In his written decision, the ALJ summarized the claimant's hearing testimony and self-prepared Function Reports, as well as the claimant's mother's testimony, Third-Party Function Report, and Seizure Questionnaire. (Tr. 17-18). The ALJ then summarized a majority of the medical evidence, and stated, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 21-22). He also noted that the opinion of the state non-examining physicians further supported a finding of "not disabled." (Tr. 20). He then found the claimant not credible, and concluded, "[i]n sum, the above residual functional capacity assessment is supported by Dr. Roberts opinion and also by claimant's own treating physician, Dr. Lutton that when claimant has her seizures under control, she should be able to return to a safe work activity. Dr. Lutton states claimant is doing well

on the Lyrica and since claimant has not returned to Dr. Lutton, it is reasonable to assume the medication is successful in controlling the seizures." (Tr. 20).

The undersigned Magistrate finds that the ALJ improperly evaluated the medical evidence for a number of reasons. The ALJ impermissibly substituted his own determination for that of Dr. Lutton's when he found that the claimant's medication had been successful in controlling her seizures. *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) ("The ALJ may not substitute his own opinion for that of claimant's doctor."), *citing Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 743 (10th Cir. 1993) and *Kemp v. Bowen*, 816 F. 2d 1469, 1475 (10th Cir. 1987). *See also Allen v. Schweiker*, 567 F. Supp. 1204, 1209 (D. Del. 1983) ("First, conclusions 1, 2 and 3 are all improper because they represent the ALJ's personal medical judgments concerning the claimant's condition . . . It is the duty of the ALJ to choose between properly submitted medical evidence, but it is not his function to assume the role of a doctor . . . A layman such as the ALJ is not free to draw his own conclusions as to the meaning of these tests."), *citing Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978). The medical evidence reflects that Dr. Lutton stopped treating the claimant because he had no other treatment options for her, not because her seizures were under control, and Dr. Denny's treatment notes also indicate a history of difficulty in controlling the claimant's seizure disorder. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989) ("[E]vidence is not substantial . . . if it really constitutes mere conclusion."), *citing Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985) and *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir. 1985). *See also Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir.

1993) ("The absence of evidence is not evidence. . . . The ALJ, however, finding no evidence upon which to make a finding as to RFC, should have exercised his discretionary power to order a consultative examination of [claimant] to determine her capabilities."); *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("[W]hen the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue.")

In any event, even if the opinions expressed by Dr. Lutton and Dr. Denny *were not* entitled to controlling weight, the ALJ should have determined the proper weight to give them by applying all of the factors in 20 C.F.R. § 404.1527. *See Langley*, 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("[An ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") [quotation omitted]. *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion. . . . The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."). The ALJ failed to perform the proper analysis here.

Because the ALJ failed to properly evaluate the medical evidence as to the claimant's seizures, the decision of the Commissioner should be reversed and the case

remanded for further analysis of the opinions of *all* the claimant's treating physicians. If such analysis results in changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma